

**Dated: June 28, 2017.**

_____
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 16-11384-TMD |
| | § | |
| FREDERICK LELAND STANFORD | § | |
| DEBORAH LYNN STANFORD | § | CHAPTER 11 |
| DEBTORS. | § | |

**MEMORANDUM OPINION**

The dispute that arose from the complicated facts in play here is primarily decided by well-established Texas law, under which a creditor's pre-existing judgment lien cannot attach to a judgment debtor's subsequently acquired property that is contemporaneously designated as a homestead.

**I.  BACKGROUND AND FACTS**

In 1977, Frederick Stanford's parents, Earl and Dorothy Seay, purchased a 4.01 acre vacant tract of land located in Williamson County, Texas.[1] They built a house on the property and moved

---
[1] Joint Pre-trial Order 1-2, 4, ECF No. 44.

1

in shortly thereafter.[2] Dorothy Seay continued to reside on the property until her death in 2000,[3] when she left her 1/2 undivided interest to six heirs.[4] Mr. Stanford, one of the six heirs, inherited an undivided 1/12th non-possessory interest, subject to a life estate.[5]

A little more than eight years later, Natural Fruit Corporation ("NFC") obtained a judgment against Mr. Stanford,[6] and attempted to enforce its judgment.[7] NFC filed an abstract of judgment, but its collection efforts were not successful.[8] NFC persisted by serving post-judgment interrogatories on Mr. Stanford in 2009 to find out, among other things, whether Mr. Stanford owned any property.[9] In his responses, Mr. Stanford failed to inform NFC of his inheritance when he provided sworn answers denying ownership or any beneficial interest in any real property.[10]

In 2012, Earl Seay died and bequeathed his 1/2 interest in the property to Janis Audrey Seay, Mr. Seay's then surviving spouse.[11] Two years later, Janis Seay died and her 1/2 interest vested in her four children from a prior marriage.[12] Mr. Stanford now owned an interest in the property along with nine other individuals:[13]

| | |
|---|---|
| Frederick Leland Stanford | 1/12th |
| Dorothy Lynn Stanford | 1/12th |
| Debby Kaye Stanford Miller | 1/12th |
| Charlotte Lee Fogle | 1/12th |

---

[2] Joint Pre-trial Order 2, ECF No. 44.
[3] Joint Pre-trial Order 2, ECF No. 44.
[4] Joint Pre-trial Order 2, ECF No. 44.
[5] Joint Pre-trial Order 2, ECF No. 44.
[6] Joint Pre-trial Order 2, ECF No. 44.
[7] Joint Pre-trial Order 2, ECF No. 44.
[8] Joint Pre-trial Order 2, ECF No. 44.
[9] Joint Pre-trial Order 2, ECF No. 44; Sworn Answers to Post J. Interrog., ECF No. 16-3.
[10] Joint Pre-trial Order 2, ECF No. 44.
[11] Joint Pre-trial Order 2, ECF No. 44.
[12] Joint Pre-trial Order 2, ECF No. 44.
[13] Joint Pre-trial Order 2-3, ECF No. 44 (listing owners as Michael Earl Seay, Debora Sue Webb, Frederick Leland Stanford, Dorothy Lynn Stanford, Debby Kaye Stanford-Miller, Charlotte Lee Fogle, Paul Buschow, Joni Buschow, Monte Buschow, and Heather Owens). Michael Earl Seay and Debora Sue Webb are Earl Seay's children. Frederick Leland Stanford, Dorothy Lynn Stanford, Debby Kaye Stanford-Miller, Charlotte Lee Fogle are Dorothy Seay's children and the step children of Earl Seay. Paul Buschow, Joni Buschow, Monte Buschow, and Heather Owens are the children of Janis Seay and step children of Earl Seay. Settlement and Mutual Release Agreement 3, ECF No. 16-4 (hereinafter "Homestead Agreement").

2

| | |
|---|---|
| Debora Sue Webb | 1/12th |
| Michael Earl Seay | 1/12th |
| Paul Buschow | 1.5/12th |
| Joni Buschow | 1.5/12th |
| Monte Buschow | 1.5/12th |
| Heather Owens | <u>1.5/12th</u> |
| | 12/12th |

This led to an approximately two-year long ownership dispute involving the inheritance claims among and against the heirs of Dorothy Seay, Janis Seay, and Earl Seay.[14]

Meanwhile, the property suffered from substantial deferred maintenance and was burdened with unpaid property taxes.[15] In 2016, the heirs faced a looming tax foreclosure sale, which motivated them to find a resolution.[16] A mutual release and settlement agreement (the "Homestead Agreement") memorialized this resolution and was signed by all parties less than a month before the scheduled tax sale.[17] All heirs were represented by counsel and the essential terms of the Homestead Agreement directed the following:

> 1. Upon full execution of this [Homestead] Agreement, Paul Buschow, Independent Executor of the Estate of Janis Audrey Seay, will transfer all of the Janis Seay beneficiaries' interest in the Property to Mr. Frederick Leland Stanford **and/or assigns** via deed signed by Mr. Buschow, as Independent Executor of the Estate of Janis Audrey Seay;
>
> 2. Debora Sue Webb will transfer her interest in the Property to Mr. Frederick Leland Stanford **and/or assigns** via deed signed by Debora Sue Webb.
>
> 3. Mr. Frederick Leland Stanford will be responsible for resolving all outstanding taxes owed to taxing authorities;
>
> 4. Within 5 business days after full execution of this [Homestead] Agreement, Mr. Stanford will pay to the Independent Executor or the cause of the Independent Executor of the Estate of Janis Audrey Seay the amount of $40,000.00.
>
> 5. Upon sale of the Property, Mr. Fredrick Leland Stanford **and/or assigns** will pay $6,000.00 to Debora Sue Webb;

---

[14] Hr'g Record 21:08-23:30, No. 16-11384 (Apr. 20, 2017).
[15] Joint Pre-trial Order 4, ECF No. 44.
[16] Hr'g Record 23:20-23:40, No. 16-11384 (Apr. 20, 2017).
[17] Homestead Agreement 2-12, ECF No. 16-4; Hr'g Record 23:40-24:10, No. 16-11384 (Apr. 20, 2017).

3

6. Upon sale of the Property, Mr. Frederick Leland Stanford will pay Debby Kaye Stanford-Miller the amount of $8,112.23 as reimbursement of legal fees paid by her for the Estate of Earl Seay.

7. Within 5 business days after full execution of this [Homestead] Agreement, Mr. Frederick Leland Stanford **and/or assigns** will pay $5,000.00 to Michael Earl Seay.

8. Michael Earl Seay will transfer his interest in the property to Mr. Frederick Leland Stanford **and/or assigns** via deed by Mr. Michael Earl Seay, individually, and Mr. Michael Earl Seay as the Executor of the estate of Earl Henry Seay. [Emphasis added].[18]

Six days after the Homestead Agreement was signed, the Stanfords took physical possession of the property.[19] They owned no other property and their intent was to claim the property as their homestead until it sold.[20] Three deeds that together conveyed an 8/12th interest to Mrs. Stanford were executed between late February and early March.[21] These deeds designated the 8/12th interest as Mrs. Stanford's "sole and separate property" and were recorded three months later.[22] Mr. Stanford, along with the other owners,[23] listed the property for sale in March 2016 and a sale contract was entered on May 2016.[24]

NFC learned about the potential sale of the property a few weeks later when it received a letter and enclosed affidavit titled "Homestead Affidavit as Release of Judgment lien."[25] NFC then renewed its collection efforts which led to multiple state court proceedings including the issuance of

---

[18] Homestead Agreement 8, ECF No. 16-4.
[19] Joint Pre-trial Order 3, ECF No. 44.
[20] Joint Pre-trial Order 3-4, ECF No. 44.
[21] Executor's Deed, ECF No. 39-1 (Paul Buschow, as the Executor for the Estate of Janis Audrey Seay, granted the Janis Seay heirs' interest to Mrs. Stanford, as her sole and separate property); Special Warranty Deed, ECF No. 39-2 (Michael Earl Seay conveyed his interest to Mrs. Stanford, as her sole and separate property); Special Warranty Deed, ECF No. 39-3 (Debora Sue Webb conveyed her interest to Mrs. Stanford, as her sole and separate property).
[22] Joint Pre-trial Order 4, ECF No. 44.
[23] Dorothy Lynn Stanford, Debby Kaye Stanford-Miller, and Charlotte Lee Fogle are the three remaining owners as they did not deed their interest to either one of the Stanfords.
[24] Joint Pre-trial Order 4-5, ECF No. 44.
[25] Hr'g Record 34:00-35:10, No. 16-11384 (Feb. 6, 2017) (Hearing on the Motion to Lift Stay); Natural Fruit Corp. Ex. 26 (Letter dated June 6, 2016 and enclosed unsigned affidavit); NFC's Post-hearing Br. 13, ECF No. 43.

a constable's deed that purported to convey the property to NFC.[26] (The constable's deed was set aside in state court.)[27] All state court proceedings were stayed when the Stanfords (Frederick and Deborah Lynn) filed for relief under Chapter 7 of the Bankruptcy Code in November 2016.[28] The Stanfords listed the property as their homestead on their bankruptcy schedules.[29] NFC objected to the Stanfords' homestead claim.[30] It also sought relief from the stay in order to continue state court litigation in which NFC contested the ownership of the property and the Stanfords' homestead claim.[31]

On April 20, 2017, the parties presented arguments, testimony, and other evidence related to NFC's objection to the homestead claim and its motion to lift the automatic stay. The parties agree NFC's lien has attached to Mr. Stanford's 1/12th interest, but disagree about whether NFC's lien attached to the 8/12th interest.[32]

## II. ANALYSIS

### A. The Stanfords established the property as their homestead.

The Stanfords carried the initial burden to establish the homestead character of the property,[33] by proving: (1) overt acts of homestead usage; and (2) an intent to claim the land as a

---

[26] Joint Pre-trial Order 5-6, ECF No. 44.
[27] Joint Pre-trial Order 5, ECF No. 44.
[28] Pet., ECF No. 1.
[29] Pet. 19, ECF No. 1.
[30] Obj.to Exemption, ECF No. 16.
[31] Mot. Relief Automatic Stay, ECF No. 8; Joint Pre-trial Order 5-6, ECF No. 44; Pet. 51, ECF No. 1 (listing pending state court litigation).
[32] Joint Pre-trial Order 7-8, ECF No. 44.
[33] *In re Bradley*, 960 F.2d 502, 507 (5th Cir. 1992) ("It is well settled in Texas that an individual who seeks homestead protection has the initial burden to establish the homestead character of her property. . . .The initial burden to establish the homestead character of property is a short hurdle."). NFC does not argue that the Stanfords have not met their burden in establishing their homestead. NFC's argument focuses on the legal premise that a "later in time homestead designation cannot destroy pre-existing lien rights." NFC's Post-hearing Br. 1, ECF No. 43. Under both Texas law and Rule 4003(c) NFC would have the burden to prove any affirmation defenses such as abandonment. *McFarland v. Rousseau,* 667 S.W. 2d 929, 931 (Tex. App. 1984); and Fed. R. Bankr. P. 4003(c). NFC has not raised any affirmation defenses such as abandonment, death or alienation. NFC's Post-hearing Br. 10, ECF No. 43 ("Abandonment is not an issue. . . .").

homestead.[34] As mentioned above, Mr. Stanford testified that the risk of losing the property due to a looming tax sale motivated the heirs to resolve their disputes.[35] The heirs agreed that the Stanfords would make the property their homestead until the property sold.[36] Given the pending tax sale, the Homestead Agreement makes sense because the "age 65 or older" exemption[37] would enable the Stanfords to file a tax deferral and immediately stop the tax sale.[38] Stopping the tax sale would protect against foreclosure and enable the Stanfords and Mr. Stanford's sisters (who hold the remaining 3/12th interest) to keep the property.[39] Thus, the premise and purpose of the settlement contained in the Homestead Agreement was that the Stanfords would claim the property as their homestead.

Mr. Stanford's unconverted testimony establishes the property was intended to be, quickly became, and continues to be their homestead.[40] It is undisputed that the Stanfords moved in less than a week after the Homestead Agreement was reached.[41] Additionally, Mr. Stanford testified that the Stanfords took physical possession of the property and planned to live there until the property sold.[42] Mr. Stanford explained that they sought to sell the property and use sale proceeds to purchase a new homestead because the property required a level of maintenance and repair that

---

[34] *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 159 (Tex. 2015).

[35] Mr. Stanford testified that Janis Seay's death (in 2014) lead to arguments among the heirs regarding the ownership of the property and issues about money. Hr'g Record at 22:12-24:07, No. 16-11384 (Apr. 20, 2017) (Mr. Stanford described the dispute by saying "it wasn't a friendly situation.").

[36] Joint Pre-trial Order 3-4, ECF No. 44; Hr'g Record at 31:20-34:23, 46:45-48:35, No. 16-11384 (Apr. 20, 2017). The property was to be sold because of the Stanfords' age and Mrs. Stanford's recent long-term hospitalization meant they could not physically maintain or improve the property. *Id.*

[37] Natural Fruit Corp. Ex. 34 (The Stanford's application for property tax exemptions).

[38] A property owner claiming over-65 exemption is entitled to defer delinquent property taxes. Tex. Tax Code Ann. § 33.06(a) (providing statutory protection for persons claiming the over-65 exemption who wish to defer tax payments and abate a pending tax foreclosure sale); *see Kubovy v. Cypress-Fairbanks Indep. Sch. Dist.* 972 S.W. 2d 130, 132 (recognizing the tax deferral's ability to abate a tax sale until the property is no longer owned and occupied by the person claiming the tax deferral); Tex. Att'y Gen. Op. GA-0787, at 3 (2010) (explaining that the tax deferral provides a statutory protection against foreclosure sale even if the lien was perfected prior to the property owner's sixty-fifth birthday).

[39] Hr'g Record at 22:12-30:07, No. 16-11384 (Apr. 20, 2017).

[40] Hr'g Record at 19:44-1:10:13, No. 16-11384 (Apr. 20, 2017).

[41] Joint Pre-trial Order 3-4, ECF No. 44.

[42] Hr'g Record at 32:00-32:58, No. 16-11384 (Apr. 20, 2017).

overwhelmed them.[43] And there was additional evidence of their intent to claim the property as their homestead. First, the Stanfords filed an "Application for Residence Homestead Exemption" ("Homestead Application") with Williamson Central Appraisal District.[44] Second, the Stanfords designated the property as their homestead on their bankruptcy schedules.[45]

NFC briefly argued that the Stanfords' intent to sell the property prevents the Stanfords from properly claiming it as their homestead.[46] But this argument fails because under Texas law the Stanfords' intent to sell the property can coexist with an intent to occupy the property as their homestead.[47]

NFC contends that the Stanfords did not properly complete the Homestead Application because it listed the owners as "Seay, Michael E & Debora Webb Et Al."[48] Mr. Stanford explained that he inquired about the way ownership was depicted on the Homestead Application and was told that the "et al" signaled that the property was held by other owners, including the Stanfords.[49] NFC did not rebut this testimony. Nor did it dispute that the Williamson Central Appraisal District granted the Homestead Application. NFC's primary arguments were that: (1) a subsequently acquired homestead is subject to a pre-existing abstract of judgment; and (2) its lien attached prior to the homestead claim because the Stanfords did not timely occupy the property and file their homestead application.

---

[43] Hr'g Record at 31:20-34:23, 46:45-48:35, No. 16-11384 (Apr. 20, 2017); *see* Joint Pre-trial Order 3, ECF No. 44.
[44] Natural Fruit Corp. Ex. 34.
[45] Pet. 19, ECF No. 1.
[46] Hr'g Record at 1:01:11-1:03:18, No. 16-11384 (Apr. 20, 2017); Obj. to Exemption 9-10, ECF No.16; NFC's Post-hearing Br. 12, ECF No. 43.
[47] *Gaar, Scott & Co. v. Burge*, 110 S.W. 181, 183 (1908) ("[A]n intention to sell the homestead and efforts in that direction . . . may coexist with an intention to remain and continue to occupy the homestead, unless such sale is made. . . ."); *see Hennigan v. Smith (In re Smith)*, 668 F. App'x 105, 107 (5th Cir. 2016) (affirming a debtor's exemption and noting the debtor "has consistently been clear that he intends eventually to sell the Property and move to Australia, there is no evidence showing that when [debtor] declared bankruptcy, he lacked the intention of making the Property his homestead.").
[48] Hr'g Record at 44:08-46:26, No. 16-11384 (Apr. 20, 2017); *see* Natural Fruit Corp. Ex. 34 at 1.
[49] Hr'g Record at 44:00-46:30, No. 16-11384 (Apr. 20, 2017).

**1. NFC's judgment lien does not attach to the Stanfords' homestead.**

NFC claims the Texas Supreme Court has established that the timing of its lien renders its lien superior to any subsequent homestead claim.[50] NFC mistakenly relies on *Gage v. Neblett*[51] for the premise that "a pre-existing abstract of judgment trumps a subsequent homestead."[52] While *Gage* supports attachment of the lien to Mr. Stanford's 1/12th interest, a point already conceded, it is not applicable to Mrs. Stanford's 8/12th interest because the *Gage* court expressly stated it was not deciding whether a pre-existing abstract of judgment can defeat a subsequent homestead.[53]

This issue was later decided in *Freiberg v. Walzem*, where a judgment was abstracted and recorded more than three years before the owner purchased a property and designated it as his homestead.[54] The plaintiff argued that a judgment's superior position as first in time meant it would immediately attach to all subsequently acquired property, even if the subsequently acquired property was claimed as homestead.[55] The Texas Supreme Court rejected the plaintiff's argument and stated:

> The lien could not attach until the land became the property of the defendant, and the very moment that it did become his property, as we have seen, it became his homestead also, upon which the lien could not operate. The property in controversy was therefore protected from the operation of the lien . . . because the land itself was exempt as the homestead of the appellee immediately upon its acquisition."[56]

Similarly, the Stanfords' property is protected from operation of NFC's lien because the property was immediately impressed with the homestead characterization.

---

[50] NFC's Br. 4, ECF No. 35.
[51] 57 Tex. 374, 378 (1882).
[52] NFC's Br. 4, ECF No. 35; NFC's Post-hearing Br. 1-2, ECF No. 43.
[53] *Gage v. Neblett*, 57 Tex. 374, 378 (1882) ("We do not decide that the legislature might not have the power, whether the courts may have or not, to declare that a homestead right might attach to property *acquired subsequently* to the rendition of a judgment against the debtor, when brought with a present *bona fide* intention to dedicate it as a homestead, coupled with acts of preparation and subsequent early occupation as such.").
[54] *Freiberg v. Walzem*, 20 S.W. 60, 61 (1892).
[55] *Id.* at 62.
[56] *Id.* at 61.

8

NFC cited to several other cases, but they do not apply because these cases do not involve a judgment lien or the facts focus on the judgment debtor's inability to establish the property as its homestead.[57]

### 2. Texas homestead law does not require immediate physical possession of the property.

NFC maintains that its lien defeats the homestead claim because the Stanfords did not immediately take physical possession of the property.[58] Texas courts have firmly rejected this proposition on the basis that such a rule would result in a race between the sheriff and the property owner.[59] In *Jolesch & Chaska Co. v. Hampton*, the judgment creditor argued that the trial court erred in holding that the property was impressed with the homestead exemption.[60] The judgment debtor inherited property from his mother, but months passed before the judgment debtor could take physical possession of the property because his mother had previously leased the property to the judgment debtor's brother.[61] The homestead designation was filed and recorded almost eight

---

[57] *In Re Harwood*, 404 B.R. 366, 400 n.69 (Banker. E. D Tex. 2009) (concluding that an unrecorded deed of trust that predates a homestead claim creates a superior lien); *Inwood North Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987) (supporting the proposition that a homestead exemption will not insulate a property owner from a lien that attached prior to the homestead claim, but also reaffirming that if the lien attached as the same time as the homeowners acquired the property, the homestead claim prevails); *Cheswick v. Freeman*, 287 S.W.2d 171, 173 (Tex. 1956) (ruling that the judgement lien attached to the land because his "intention to make this property his homestead was not evidenced by any overt acts"); *Johnson v. Prosper State Bank*, 125 S.W.2d 707, 710-711 (Tex. Civ. App.—Dallas 1939) *aff'd* 138 S.W.2d 1117 (1940) (determining that the judgement lien predated any potential homestead claim because the judgment debtor did not have a possessory interest in the land); *Dominguez v. Castanada*, 163 S.W.3d 318, 331-332 (Tex. App.—El Paso 2005, pet. denied) (explaining that a deed of trust that attached to land cannot be severed by a subsequent homestead claim).

[58] Obj.to Exemption 5, ECF No. 16; Hr'g Record 40:00-41:49 No. 16-11384 (Feb. 6, 2017) (Hearing on the Motion to Lift Stay); Hr'g Record at 46:48-49:00, No. 16-11384 (Apr. 20, 2017).

[59] *Jolesch & Chaska Co. v. Hampton*, 297 S.W. 271, 273 (Tex. Civ. App. 1927); *see Gardner v. Douglass*, 64 Tex. 76, 79 (1885) (finding a three month lapse between ownership and physical possession did not render the homestead claim void and a judgment rendered prior to ownership could not attach to the land); *Farmers' & Mech.' Tr. Co. v. Perry*, 56 S.W.2d 501, 502 (Tex. Civ. App. 1933) (recognizing that Texas "courts have held consistently from an early day that property purchased for use as a homestead is exempt to such purchaser, notwithstanding there be judgment liens recorded against him at the time").

[60] *Jolesch & Chaska Co.*, 297 S.W. at 272.

[61] *Id.* at 274.

9

months after the will bequeathing ownership was probated.[62] The court recognized that there is usually an "unavoidable interval" between acquisition and physical possession of the property,[63] and stated that: "[i]f a homestead cannot be acquired until it is occupied, then no one can acquire a homestead exempted from forced sale unless he buys an improved place; and then he must have a race with the sheriff for possession."[64]

Here, the Homestead Agreement was finalized and signed on February 10, 2016.[65] Just six days later, the Stanfords took physical possession of the property and filed their homestead application.[66] In light of Texas's deference to the homestead exemption and its stance against creating a race to the courthouse, the Stanfords' six-day delay in taking physical possession does not cause the 8/12 interest to lose its homestead status. Thus, NFC's lien did not attach to the disputed 8/12th interest.[67]

"Under Texas law, property that has been designated as homestead will not lose that character unless abandonment, death, or alienation occurs."[68] None of these have occurred here so the Stanfords' homestead exemption must be recognized.

---

[62] *Jolesch & Chaska Co. v. Hampton*, 297 S.W. 271, 272-73 (Tex. Civ. App. 1927).
[63] *Id*. at 273.
[64] *Id.* (quoting *Cameron v. Gebhard*, 22 S.W. 1033, 1035 (Tex. 1893)).
[65] Joint Pre-trial Order 3, ECF No. 44.
[66] Joint Pre-trial Order 3-4, ECF No. 44; Natural Fruit Corp. Ex. 34.
[67] Nor should the delay in receiving title matter. "The law does not require a fee simple interest, nor even a written lease, only that a property be 'used for the purpose' of a home." *In re Brunson*, 498 B.R. 160, 163 (Bankr. W.D. Tex. 2013) (citing *In re Perry,* 345 F.3d 303, 310 (5th Cir. 2003)). And until the deeds were delivered to Mrs. Stanford, Mr. Stanford held equitable title, to which NFC's lien could not attach. *In re Onley*, 48 B.R. 891, 894 (Bankr. N.D. Tex. 1985) (determining that a buyer under a contract for "the sale of real property obtains an 'equitable interest' upon entering into the contract"); *see In re Goff*, 812 F.2d 931, 933 (5th Cir. 1987) (citing *Watson v. Scales,* 244 S.W.2d 366, 368 (Tex. Civ. App.—Texarkana 1951); *Adams v. Impey,* 131 S.W.2d 288, 290 (Tex. Civ. App.—Beaumount 1939) ("The judgment lien attaches only to real property in which the judgment debtor has legal title; it does not attach to property in which the debtor has only equitable title.").
[68] *In re Comu*, 542 B.R. 371, 385 (Bankr. N.D. Tex. 2015).

### B. The merger doctrine is not applicable.

NFC urges the Court to apply the doctrine of merger and hold its lien also attaches to the 8/12th interest because the 8/12th interest merged with the 1/12th interest.[69] The merger doctrine is defined as the "absorption of a lesser estate in land into the greater" estate.[70] The merger doctrine is disfavored in Texas.[71] This disfavored status is demonstrated by the requirement that each of the six elements must be met:

> (1) there must be a greater and lesser estate;
> (2) both estates must unite in the same owner;
> (3) both estates must be owned in the same right;
> (4) there must not be an intervening estate;
> (5) merger must not be contrary to the intention of the owner of the two estates; and
> (6) merger must not be disadvantageous to the owner of the two estates.[72]

The Court will not apply the merger doctrine here because three of the six elements are not met.

### 1. Application of the merger doctrine would be disadvantageous to the Stanfords.

Texas courts have consistently refused to apply merger over the objection of the owner.[73] NFC argued (disingenuously) that merger would not be disadvantageous because of the Stanfords' intent to sell the property.[74] But merger would be disadvantageous to the Stanfords if in fact merger would enable NFC's lien to attach to the disputed 8/12th interest. At the hearing, NFC

---

[69] Obj.to Exemption 16, ECF No. 16; NFC's Br. 5-7, ECF No. 35.
[70] *Steger v. Muenster*, 134 S.W.3d 359, 376 (Tex. App.—Fort Worth 2003).
[71] *Id.*
[72] *Id.*
[73] *See Steger,* 134 S.W.3d at 376-77 (application of merger is determine by analyzing the owner's interest, intent, and circumstances); *Smith v. U.S. Nat'l Bank of Galveston*, 767 S.W.2d 820, 823 (Tex. App.—Texarkana 1989, writ denied) ("[E]quity will not decree the merger of estates when it would be disadvantageous to the person acquiring both interests."); *Flag-Redfern Oil Co. v. Humble Expl. Co.*, 744 S.W.2d 6, 9 (Tex. 1987) (requiring that all six elements- including disadvantageous- must be met in order for merger to apply). *But see First Heights Bank, FSB v. Gutierrez*, 852 S.W.2d 596, 612-13 (Tex. App.—Corpus Christi 1993, writ denied) (applying merger over owner's objection because to bar the application of merger would result in assisting the owner in his attempts to commit fraud and elements 1 through 4 had been met).
[74] NFC's Br. 7, ECF No. 35.

acknowledged that Texas law does not permit merger where it is disadvantageous and did not cite any cases where merger was applied in a manner that did not benefit the owner.[75] NFC's post-hearing brief also contains no cases supporting its argument that merger should be applied over the Stanfords' objections.[76]

### 2. Mr. Stanford does not own the 1/12th interest in the same right as the 8/12th interest.

The merger doctrine can only be invoked if the property is owned in the same right.[77] NFC seeks to satisfy this element by characterizing the Homestead Agreement as a contract for deed and asserting that the Homestead Agreement conveyed an 8/12th interest to Mr. Stanford that is the same as his 1/12th legal interest.[78] Texas law governs because a debtor's property interests are defined by state law.[79] It is well-settled Texas law that a grantee under a contract for deed only acquires an equitable interest in the property.[80] A judgment lien attaches only to real property in which the judgment debtor has legal title; it does not attach to an equitable title interest.[81]

Therefore, the Homestead Agreement at best conveyed an 8/12th equitable interest in the property to Mr. Stanford, not a legal interest.[82] And Mr. Stanford never acquired requisite legal title to the 8/12th interest because it was deeded to Mrs. Stanford, as her sole and separate property.[83]

---

[75] The Court stated "merger must not be disadvantageous to the owner of the two estates." NFC's counsel simply replied "correct" and did not cite any cases where merger was applied to the determinant of the estate. H'rg Record 9:42-9:43 (Apr. 20, 2017).

[76] NFC's Post-hearing Br. 13-14, ECF No. 43.

[77] *Steger v. Muenster*, 134 S.W.3d 359, 376 (Tex. App.—Fort Worth 2003).

[78] Obj.to Exemption 16, ECF No. 16.

[79] *Butner v. United States*, 440 U.S. 48, 54 (1979); *In re Prudhomme*, 43 F.3d 1000, 1004 (5th Cir. 1995) (discussing how equitable interests are defined by state law).

[80] *Magee v. Young*, 198 S.W.2d 883, 886 (Tex. 1946); *Atkins v. Carson,* 467 S.W.2d 495, 500-01 (Tex. Civ. App.—San Antonio 1971, writ ref'd. n.r.e.); *In re Onley*, 48 B.R. 891, 894 (Bankr. N.D. Tex. 1985) ("Texas favors a third concept—that a vendee under a contract for the sale of real property obtains an 'equitable interest' upon entering into the contract.").

[81] *See In re Goff*, 812 F.2d 931, 932–33 (5th Cir. 1987) (ruling against attachment of a lien because "the Goffs held only equitable title to the real property in the trust").

[82] *See Cadle Co. v. Harvey*, 46 S.W.3d 282, 287 (Tex. App.—Eastland 2001) (acknowledging well-settled law holding a contract for deed only conveys an equitable interest).

[83] *See* ECF No. 39 (exhibits containing the three deeds).

### 3. The Stanfords' actions do not demonstrate an intent to merge the interests.

Merger will not be applied when application would be inconsistent with the intent of the parties.[84] NFC states the Stanfords' intent to merge the property is obvious because the Stanfords intend to sell the property.[85] But an intent to sell is not an evident intent to merge their interests and is contrary to other evidence. Their bankruptcy schedules demonstrate a desire to maintain separate interests as the Stanfords scheduled the 1/12th interest as Mr. Stanford's separate property and the 8/12th interest as Mrs. Stanford's separate property.[86] At the hearing, Mr. Stanford did not express an intent to merge his legal 1/12th interest with the disputed 8/12th interest.

Of course, even if merger is applied, the 8/12th interest would still be impressed with the homestead so the NFC's lien would still not attach.

### C. Equitable estoppel requires specific intent which has not been shown.

NFC also raised equitable estoppel.[87] Equitable estoppel applies when five elements are met:

(1) a false representation or concealment of material facts;
(2) made with either actual or constructive knowledge of the truth;
(3) to a party without knowledge of the truth or without the means of knowing the truth;
(4) with the intention that the false representation or concealment should be acted on; and
(5) the party to whom it was made actually relied on or acted on it to his prejudice.[88]

The burden is on NFC to show by a preponderance of the evidence that the Stanfords' exemption should be equitably estopped.[89] To satisfy its burden, NFC must prove specific intent at the relevant

---

[84] *Smith v. U.S. Nat'l Bank of Galveston,* 767 S.W.2d 820, 823 (Tex. App.—Texarkana 1989, writ denied).
[85] NFC's Br. 7, ECF No. 35.
[86] Pet.19, ECF No. 1.
[87] Obj.to Exemption 17-18, ECF No. 16.
[88] *In re Villarreal*, 401 B.R. 823, 833 (Bankr. S.D. Tex. 2009).
[89] *Id*.

13

time.[90] Any misrepresentations made by Mr. Stanford may estop his homestead claim depending on when the false representation was made.[91]

NFC maintains that the Stanfords should be equitably estopped from claiming their homestead exemption because Mr. Stanford falsely stated he did not own any property in his answers to the post-judgment interrogatories.[92] Mr. Stanford's position is that he did not understand that he owned the 1/12th interest because at that time his interest was subject to a life estate.[93] But the falsity of the representation is immaterial because even if NFC can prove specific intent, Mr. Stanford's intent necessarily had to be limited to the 1/12th interest, because that is all he owned at the time. So equitable estoppel does not apply to the 8/12th interest.

### D. Judicial estoppel does not apply because there is no prior court ruling.

NFC also argued that the Stanfords should be judicially estopped from claiming a homestead in the 8/12th interest based on the disclaimer made by Mr. Stanford in the interrogatory responses.[94] The elements of judicial estoppel are: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently."[95] Here, these elements have not been met because there is no prior ruling from any court on Mr. Stanford's ownership of the 1/12th interest. In fact, NFC seeks to the lift the stay in order to pursue such a court ruling. However even if another court did make a prior ruling based on Mr. Stanford's misrepresentation, that ruling could not apply to Mrs. Stanford's 8/12th interest because Mr. Stanford did not take, at

---

[90] *In re Villarreal*, 401 B.R. 823, 833-34 (Bankr. S.D. Tex. 2009).
[91] *Id.* at 834 ("In the case of a homestead exemption claim, '[m]isrepresentations by a homestead claimant may, under the proper circumstances, create an [equitable] estoppel to the claim.'") (quoting *First Interstate Bank v. Bland*, 810 S.W. 2d 277, 283 (Tex. App.—Fort Worth 1991, no writ)).
[92] Obj.to Exemption 17-18, ECF No. 16.
[93] Debtors' Resp. to Objection to Exemptions 9, ECF No. 24.
[94] Obj.to Exemption 14-16, ECF No. 16.
[95] *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011).

the time of the disclaimer, an inconsistent position relating to the 8/12th interest, which he did not then own.[96]

### E. The fraudulent transfer assertion also fails.

NFC also states that the deeds conveying the interest to Mrs. Stanford are evidence of Mr. Stanford's fraudulent transfer to Mrs. Stanford because he caused the deeds to be conveyed to Mrs. Stanford as her sole property in effort to avoid NFC's lien.[97] But this proposition fails for several reasons. First, when the Stanfords acquired their homestead interest, which occurred when the Homestead Agreement was signed, it was at that point exempt from the claims of Mr. Stanford's prepetition creditors,[98] and so none of those creditors, including NFC, could be affected by subsequent transfers. In addition, as discussed above, the homestead designation defeats the attachment of NFC's lien. Finally, NFC lacks standing to raise fraudulent transfer claims because those claims, if any, belong to the trustee.[99]

### F. The motion to lift stay is moot.

The Stanfords received their discharge on May 19, 2017.[100] At that time, the stay ended, which rendered the motion to lift stay moot.[101] A separate order will be entered mooting the motion.

## III. CONCLUSION

For the foregoing reasons, the objection will be denied by separate order.

---

[96] *See In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004) ("Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation.").
[97] Obj. to Exemptions 3-4, 20, ECF No. 16.
[98] *See* 11 U.S.C. 522(c) (providing statutory exemptions).
[99] *Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.),* 714 F.2d 1266, 1275 (5th Cir. 1983) ("In any event, the Supreme Court held in 1878 that an action based on such a fraudulent transfer "vested in the [trustee]," and therefore could not be brought by a creditor acting alone and without the court's express permission.") (citing *Glenny v. Langdon*, 98 U.S. 20, 22, 27-31(1878)).
[100] Order of Discharge, ECF No. 46.
[101] 11 U.S.C. 362(c)(2)(C).